IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| SHARON BERTROCHE, M.D., | |
| Plaintiff, | No. 18-CV-59-CJW |
| vs. | **ORDER** |
| MERCY PHYSICIAN ASSOCIATES, INC., | |
| Defendant. | |

_____

This matter is before the Court on Sharon Bertroche, M.D.'s ("plaintiff") Motion for Conditional Class[1] Certification and Court Authorized Notice. (Doc. 14). Mercy Physician Associates timely resisted the motion. (Doc. 27). The Court heard argument on the motion on July 31, 2018. The Court ordered the parties to submit certain data to the Court and granted leave for the parties to file supplemental briefing. (*See* Doc. 33). Both plaintiff and defendant submitted supplemental briefs, as well as the required data. (Docs. 34-37). For the following reasons, the Court **grants in part and reserves ruling in part** on plaintiff's motion.

---

[1] Although plaintiff has styled her motion as a motion seeking conditional *class* certification, plaintiff's claim under the Fair Labor Standards Act, discussed *infra*, would potentially give rise to a *collective* action, as opposed to a *class* action. *See Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp.2d 870, 887-88 (N.D. Iowa 2008) (explaining that members of a class action must opt out to be excluded from the action, while members of a collective action must opt in to be included in the action). As such, the Court will construe plaintiff's motion as a motion for conditional certification of a *collective* action.

## I. BACKGROUND

Plaintiff is a female medical doctor who previously practiced medicine at Mercy Physician Associates ("defendant"). Plaintiff filed this action in state court in November 2016, alleging, *inter alia*, that defendant owed plaintiff $43,149.00 as compensation for work plaintiff performed for defendant. (Doc. 4, at 2-3). On April 27, 2018, plaintiff amended her state court petition to add a claim under the federal Equal Pay Act. (Doc. 6, at 4-5). On May 24, 2018, defendant timely removed this action to federal court. (Doc. 1).

The parties appear to have engaged in substantial discovery regarding the state law claims during the pendency of the state court proceeding. (Docs. 14, at 3; 27, at 3). In discovery, defendant produced documents including income statements for the income paid to physicians other than plaintiff who were employed by defendant. (Doc. 27, at 3). Plaintiff alleges that these income statements, although difficult for plaintiff to interpret, show "systemic and substantial compensation differences between similarly-situated [sic] male and female physicians employed by [d]efendant." (Docs. 14, at 3; 14-1, at 3-4). This alleged gender-based pay gap led plaintiff to bring her claim under the Equal Pay Act and, now, to seek conditional certification of the class of female physicians who were employed by defendant during a set time period so that she may "notify other potential plaintiffs that they may have an Equal Pay Act claim against [defendant] and enable them to 'opt in' to this case." (Doc. 14-1, at 4).

## II. APPLICABLE LAW

The Equal Pay Act, 29 U.S.C. § 206, is one of many provisions contained within the Fair Labor Standards Act, 29 U.S.C. 201, *et. seq.* ("FLSA"). Under the Equal Pay Act, an employer may not discriminate against employees "on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal

2

skill, effort, and responsibility . . . ." 29 U.S.C. § 206(d)(1). An action to recover damages under the Equal Pay Act "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff . . . unless he gives his consent in writing . . . ." 29 U.S.C. § 216(b). Thus, class members must opt in to be considered parties to a collective action under the FLSA. *Bouaphakeo*, 564 F. Supp.2d at 890 (citing *Schmidt v. Fuller Brush Co.*, 527 F.2d 532, 536 (8th Cir. 1975)).

Under the FLSA, "[t]he sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013). Thus, the FLSA authorizes district courts to facilitate providing notice to potential plaintiffs "in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 169-70 (1989). In authorizing notice to potential plaintiffs, the Court must take care to prevent "unwarranted solicitation" of potential plaintiffs. *Bouaphakeo*, 564 F. Supp.2d at 890 (citation and internal quotation marks omitted).

This Court has previously followed a two-step approach to determine whether it is appropriate to certify a collective action under the Equal Pay Act. At the first step, a plaintiff "need merely provide some factual basis from which the court can determine if similarly situated potential plaintiffs exist." *Id.*, at 892 (citation and internal quotation marks omitted). This standard is "more lenient," and does not require a showing that the potential plaintiffs are *actually* similarly situated to the plaintiff. *Id.* However, allegations alone are insufficient for a plaintiff to meet his or her burden. *Id.* Supporting evidence must be provided and, further, the evidence should show that other potential plaintiffs desire to opt in to the lawsuit. *Id.* This Court has summarized that "conditional

3

certification in the first step requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* (citations and internal quotation marks omitted).

At the second stage of the two-step inquiry, the plaintiff seeking certification must show that he or she is "similarly situated with respect to [his or her] job requirements and pay provisions." *Id.* (citation and internal quotation marks omitted). This showing, however, is not required, in every case, to be made at the conditional certification stage. Rather, "[t]his showing is usually required after a collective action has been conditionally certified and upon the defendant's motion to decertify, or after the close of discovery, or at least where discovery is largely complete and the matter is ready for trial." *Id.* (internal citations and quotation marks omitted). Plaintiff's burden at the second stage is heavier than at the first stage. *Id.* The Court has emphasized in the past, and emphasizes again, that "the level of proof required at each stage in the FLSA collective action certification process is largely dependent upon the amount of information before the court." *Id.*, at 893.

### III. DISCUSSION

#### A. *Conditional Certification*

The Court will first note that although the parties engaged in substantial discovery while this action was pending in state court, that discovery largely related to only the state law claims. Plaintiff advised the Court that the parties have engaged in little to no discovery with respect to the Equal Pay Act claim, aside from the single document that led to plaintiff bringing the Equal Pay Act claim. Thus, plaintiff has little information upon which to base her argument in favor of conditional certification, and the Court, likewise, has little information to turn to in determining whether conditional certification is appropriate. As a result, the level of proof plaintiff must bring in support of her argument for conditional certification is lesser than if the parties had engaged in the full

4

breadth of discovery with respect to the Equal Pay Act claim. *See id.*

Turning now to the merits of plaintiff's motion, the Court finds it appropriate to address only the first step of the two-step inquiry at this stage of the litigation. Thus, the Court must determine whether plaintiff has offered supporting evidence and made "substantial allegations" that other potential plaintiffs exist who, together with plaintiff, were victims of the same decision, policy, or plan. *Id.* Plaintiff has satisfied her burden of showing that at least one other potential plaintiff exists who would be interested in joining the lawsuit. (*See* Doc. 32).[2] The Court will therefore proceed to the issue of whether plaintiff has met her burden of showing that similarly situated plaintiffs exist.

Because the parties have not engaged in discovery targeted at the Equal Pay Act claim, the primary piece of relevant evidence available to plaintiff and the Court is a set of income statements for physicians who were employed by defendant. The Court ordered the parties to prepare data compilations showing "the average annual compensation for those male physicians and for those female physicians who were employed by defendant during the subject time period." (Doc. 33, at 1). Each party submitted a separate data compilation based on slightly different legal theories. Defendant contends that the relevant group of physicians is all physicians, regardless of specialty, who were employed by defendant during the three years prior to the date on which plaintiff amended her complaint to add the Equal Pay Act claim through the last date plaintiff was employed by defendant. (Doc. 35, at 2-3). Plaintiff, on the other hand, argues that only family practice physicians should be considered when addressing plaintiff's Equal Pay Act claim and, further, that the relevant time period is 2013 through

---

[2] The Court notes that the affidavit appearing on the docket does not appear to be properly notarized. The original affidavit was, however, presented to the Court during the hearing, and the Court noted on the record that the affidavit was notarized with a raised seal. Because the document was scanned prior to being filed, however, the raised seal does not appear on the scanned version in the same way a notary stamp would.

5

2015. (Doc. 37, at 2-3). At this time, the Court need not definitively determine which physicians comprise the relevant group, nor does the Court need to definitively determine the relevant time period.

The Court will rely on defendant's data compilation in determining whether plaintiff has met her burden. The crux of plaintiff's argument is stated as follows:

> [Defendant's compilation] figures conclusively establish a factual basis for concluding that other potential plaintiffs exist—namely, the other female . . . physicians [who worked for defendant] who have been paid, on average *35 to 27.4 percent less* than their male colleagues for performing similar work. The significant gender-based compensation differences confirmed by [defendant's] own data summary establish that other potential plaintiffs likely exist and that [plaintiff] has therefore met the minimal standards for granting conditional certification.

(Doc. 37, at 3 (emphasis in original)). Plaintiff is not required to prove, at this stage, that the disparity in compensation between men and women is due to discrimination on the basis of gender. Nor is plaintiff required to prove at this stage that other potential plaintiffs are similarly situated—that is, plaintiff is not required to prove at this stage that all potential plaintiffs received lesser compensation than their male counterparts due to their gender, irrespective of other differences. The evidence plaintiff has brought in support of her claims, and the supporting argument plaintiff has offered, are sufficient to show that other potential plaintiffs exist who may have been discriminated against on the basis of their gender, just as plaintiff alleges she was.

The Court recognizes defendant's argument that although there is a pay gap between men and women, that pay gap is not attributable to differing rates of pay, but is rather due to different physicians expending different amounts of effort to earn their total compensation. (Doc. 36, at 1-2). The Court further recognizes defendant's argument that non-medical practice revenue contributed to the total compensation of certain physicians and, as a result, those physicians may have earned greater total compensation

6

based on factors completely independent from the rate paid for rendering strictly medical services. (*Id.*, at 8). Defendant has not, however, presented any evidence at this stage in support of these arguments, nor has defendant asserted that if the compensation figures were adjusted for the "non-rate-of-pay-factors," that the rate of pay would be equal for both male and female physicians. Defendant has offered only bare allegations with no evidence showing that plaintiff's Equal Pay Act claim must fail when all factors are considered. Although defendant does not bear the burden of proof at this stage, the Court finds that plaintiff has met her low burden of proof, and defendant has failed to rebut that burden. As such, the portion of plaintiff's motion seeking conditional certification is **granted**.

### B. *Relevant Time Period and Relevant Physicians*

Because the Court finds that plaintiff has met her burden of showing that the Court should grant conditional certification, the Court is in a position to address the notice procedures for potential plaintiffs. The Court will turn first to which female physicians plaintiff may contact. Plaintiff argues that 2013 through 2015 is the relevant time period to consult in determining whether the class should be certified, but plaintiff has advanced no argument with respect to what the relevant time period is when considering the merits of plaintiff's claim. Defendant argues that based on the statute of limitations, the relevant time period would be April 27, 2015, through the date of plaintiff's departure from defendant. (*See* Docs. 35, at 3; 6 (First Amended State Court Petition dated April 27, 2018)).

The parties have not fully briefed the issue of the relevant time period, and the Court will therefore refrain from definitively ruling on the issue until the parties have had an opportunity to address it. For purposes of notifying potential plaintiffs, however, the relevant time period will be considered to be April 27, 2015, through the date of plaintiff's departure from defendant in 2016. In limiting the time period in this fashion,

7

it is possible that some potential plaintiffs may not receive notice of the suit. Plaintiff has, however, failed to meet her burden of showing that those female physicians who were employed prior to April 27, 2015, are potential plaintiffs. Further, the Court notes that based on defendant's data compilation, only three female physicians who were employed prior to 2015 were not also employed in 2015. As a result, three potential plaintiffs, at most, will not receive notice of this suit. Although it is more desirable to provide notice to all potential plaintiffs, there is a strong interest in preventing the needless harassment of those who ultimately would not have legitimate claims.

The Court also finds it appropriate to limit the class of physicians to whom plaintiff may send notices. Again, the parties have not fully briefed the issue of how the class of potential plaintiffs should be defined, and the Court will not presently expand the class beyond plaintiff's theory. The class of potential plaintiffs to whom plaintiff may send notices is therefore limited to only family practice physicians. The Court notes that to the extent defendant argues that the remaining non-family practice physicians are relevant to show a lack of gender discriminatory conduct, such an argument is a defense, and the non-family practice physicians do not necessarily need to be joined as parties for defendant to assert this defense. Thus, defendant is directed to provide plaintiff with the names, last known addresses, and dates of employment for all female family practice physicians defendant employed between April 27, 2015, and plaintiff's last date of employment with defendant.[3] This information is to be provided by **September 28, 2018**.

---

[3] Plaintiff also requests the phone numbers for all potential plaintiffs. (Doc. 14, at 5). Since the Court is not granting leave for plaintiff to contact potential plaintiffs via telephone the Court sees no need for plaintiff to have this information. If a potential plaintiff wishes to provide plaintiff with her phone number, the potential plaintiff may do so, but the Court will not presently order defendant to provide this information absent the potential plaintiffs' consent.

C.  *Form of Notice to Potential Plaintiffs*

Plaintiff has also requested that the Court approve the notice to be sent to potential plaintiffs, the opt-in consent forms to be sent, and language on the outside of the envelope in which the documents will be sent. (Doc. 14, at 5). Defendant "requests the opportunity to submit a proposed notice in a form substantially similar to the opt-in portions of [the] notice approved by the United States District Court for the Northern District of Iowa in *Bhouaphakeo v. Tyson Foods., Inc.*" (Doc. 27, at 13).

The Court finds that defendant should be afforded the opportunity to advance its own versions of the documents to be provided to potential plaintiffs, as well as express its views on the language that should or should not appear on the outside of the envelope containing the documents.[4] Defendant may therefore submit, by **September 12, 2018**, its own versions of the notice, consent form, and language appearing or not to appear on the outside of the envelope containing the documents. Defendant may also submit a brief in support by the same date. Plaintiff may submit a reply brief by **September 19, 2018**, if she so chooses. The Court reserves ruling on the portion of plaintiff's motion concerning the form in which notice is to be provided to potential plaintiffs.

IV.  **CONCLUSION**

For the aforementioned reasons, the Court **grants in part and reserves ruling in part** on plaintiff's Motion for Conditional Class Certification and Court Authorized Notice. (Doc. 14). Defendant is directed to provide plaintiff with the names, last known addresses, and dates of employment for all female family practice physicians defendant employed between April 27, 2015, and plaintiff's last date of employment with defendant. Defendant may submit by **September 12, 2018**, its own versions of the notice, consent

---

[4] Although defendant could have provided its own versions when defendant filed its resistance, defendant did not do so, and plaintiff does not contest defendant's request for an opportunity to now be heard on these issues.

form, and language appearing or not to appear on the outside of the envelope.  Defendant may also submit a brief in support by the same date.  Plaintiff may submit a reply brief by **September 19, 2018**, if she so chooses.

    **IT IS SO ORDERED** this 29th day of August, 2018.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa